UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AARON TOMSHECK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-120 JD |
| | ) |
| TOWN OF LONG BEACH, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Aaron Tomsheck was terminated from his job as Building Commissioner of the Town of Long Beach, Indiana, following months of conflict with other members of the Building Commission. He then sued the Town and each member of the Town Council. He claims he was fired for engaging in speech protected by the First Amendment—specifically, his testimony in a civil case by homeowners challenging decisions by the Town's Board of Zoning Appeals—and he asserts related claims under state law for wrongful termination.

The defendants moved for summary judgment, raising two principal arguments: (1) that Mr. Tomsheck's speech was not protected by the First Amendment (and at the very least, it was not clearly established that the speech was protected, as required to avoid qualified immunity), and (2) that he was not fired for that speech, but for other reasons including his insubordination and defiance of the Building Commission's authority. In response, Mr. Tomsheck cited several facts that he believes cast suspicion on the reason he was fired. Not only does that argument fall short, but Mr. Tomsheck made no attempt at all to respond to the first argument and demonstrate that he engaged in protected speech. The Court thus grants summary judgment on the federal claims and relinquishes supplemental jurisdiction over the state claims.

# I. FACTUAL BACKGROUND

The facts are set forth in detail in the defendants' Statement of Undisputed Material Facts—all of which are deemed admitted because Mr. Tomsheck failed to submit a Statement of Genuine Disputes, as required by the local rules. N.D. Ind. Local Rule 56-1(b)(2); Fed. R. Civ. P. 56(e). To summarize, Mr. Tomsheck began serving as the Building Commissioner for the Town of Long Beach in 2014. In that position, he had responsibility for the enforcement of the Town's building and zoning ordinances. The Town also has a Building Commission, which shares responsibility for the administration and enforcement of the building and zoning ordinances.

An election in 2015 dramatically changed the make-up of the Long Beach Town Council. All of the members voted into office in that election had run on a platform that included preserving the right of access to the beach and properly administering Town ordinances. Upon taking office in January 2016, the new councilmembers made new appointments to the Building Commission. The newly constituted Building Commission in turn elected a new chair, displacing Mr. Tomsheck from his previous role as *de facto* president of the Building Commission. The Building Commission then adopted new directives that limited Mr. Tomsheck's authority as Building Commissioner and imposed a greater degree of oversight over his work.

Mr. Tomsheck and the Building Commission did not see eye-to-eye on how to best interpret and enforce the town's building code, or on the respective authority of the Building Commissioner and the Building Commission. Those disagreements came to a head in a dispute over three homeowners' attempts to build seawalls on their properties adjacent to Lake Michigan—projects that were contentious and generated public opposition. Mr. Tomsheck, believing the seawalls should be allowed, took various actions to facilitate their approval and construction. The Building Commission, holding the opposite view, responded each time by taking various actions to prevent their construction. The homeowners then filed suit in state

court, and Mr. Tomsheck testified on multiple occasions over the course of that suit. He testified, among other things, that he believed that the Building Commission had no authority over the administration or enforcement of the Town's building and zoning codes; that the Building Commission had no authority to supervise him as Building Commissioner; that the Town's building and zoning ordinances were largely invalid; and that the Commission's interpretation of the ordinances was incorrect.

Mr. Tomsheck's opposition to the Building Commission was not limited to his testimony. In various other communications made in his role as Building Commissioner, he expressed disagreement with the Commission's interpretation of building and zoning ordinances. For example, he sent an email to several members of the public, including one of the homeowners and an attorney in the pending suit against the Town, in which he disagreed with the Commission's interpretation of the building code. Mr. Tomsheck acknowledged that this email violated explicit instructions not to communicate with the suing homeowners or their attorney.

In May 2016, when it came time for Mr. Tomsheck to present a report at the Commission's public meeting, he refused to do so. Instead, he challenged the Commission's authority and argued that it was unlawfully constituted, and asserted that he would report only to the Town Council, as he refused to accept the Commission's authority. Later that month, the Town Council held an executive session to discuss Mr. Tomsheck's performance. Then, in June 2016, the Town Council held a special meeting and unanimously voted to terminate Mr. Tomsheck's employment. The councilmembers later testified to the reasons for their votes, with common themes being Mr. Tomsheck's insubordination and his refusal to cooperate with the Commission. None of them testified that they considered his testimony; some were not even aware of it at the time.

Mr. Tomsheck responded with this suit against the Town and the five members of the Town Council. Discovery has closed, and the defendants filed a motion for summary judgment, which is now ripe.

## II. STANDARD OF REVIEW

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III. DISCUSSION

Mr. Tomsheck claims that his firing violated his rights under both federal and state law. As explained below, summary judgment is warranted on the federal claims, so the Court relinquishes supplemental jurisdiction over the state claims.

A.  **First Amendment Retaliation**

Mr. Tomsheck first asserts that the defendants violated his rights under the First Amendment by firing him in retaliation for protected speech. A First Amendment retaliation claim requires a plaintiff to prove that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017). In moving for summary judgment, the defendants contest the first and third elements. They argue that Mr. Tomsheck's testimony did not constitute protected speech, and that he wasn't fired for that testimony anyway. The Court addresses both arguments, but Mr. Tomsheck's claims fail first and foremost because he failed to even address the first argument.

The threshold question in a First Amendment retaliation claim is whether the speech was constitutionally protected. *Kubiak v. City of Chi.*, 810 F.3d 476, 481 (7th Cir. 2016); *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013). "The inquiry into the protected status of speech is one of law, not fact." *McArdle*, 705 F.3d at 754. To be protected, speech must have been made by an individual as a citizen—not pursuant to the individual's duties as a government employee—and must be on a matter of public concern. *Kubiak*, 810 F.3d at 481. Not all speech that satisfies those elements receives protection, though. The government as an employer has a "countervailing interest in controlling the operation of its workplaces." *Lane v. Franks*, 573 U.S. 228, 236 (2014); *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006) (noting that when public employees "speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions," which could undermine the government's ability to efficiently provide public services). Thus, a court must balance the interests of the individual in commenting upon matters of public concern, against the interest of

the government as an employer in promoting the efficiency of the public services it performs through its employees. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).

In moving for summary judgment, the defendants focus on the last part of this analysis. They argue that even if Mr. Tomsheck's testimony[1] was made as a private citizen on a matter of public concern, the Town's interest in the effective administration of its services outweighed Mr. Tomsheck's interests, so the testimony does not qualify as protected speech. They argue, for example, that Mr. Tomsheck's testimony that the Commission had "usurped" his authority, and his other testimony deprecating the Commission's authority and its oversight of his position, threatened to undermine the working relationships necessary to carry out the Town's functions. They also argue that his testimony that the Town's building and zoning ordinances were invalid and that its interpretation of its ordinances was incorrect threatened the Town's ability to properly administer those ordinances—which Mr. Tomsheck was charged with enforcing. In sum, they argue that Mr. Tomsheck's testimony "significantly threatened public confidence in the lawful authority of the Building Commission under the Town's ordinances, and in the ability of the Town to efficiently and effectively administer and enforce its ordinances." [DE 41 p. 18].

Even though this argument formed a principal basis for the defendants' motion for summary judgment, Mr. Tomsheck failed to respond to it at all, and made no effort to establish that his speech was protected. In fact, his brief never even identifies what speech he engaged in that he believes is protected. He has thus waived the issue, and summary judgment is warranted on that basis alone. Summary judgment is the put up or shut up moment in a lawsuit. A party opposing summary judgment must inform the district court of the reasons—legal or factual—

---

[1] Though he made similar statements in other contexts, only his testimony could arguably have been made as a private citizen, *Lane*, 573 U.S. at 238, as his other communications as building commissioner would have been made pursuant to his official duties. *See Garcetti*, 547 U.S. 410.

why summary judgment should not be entered. *Riley v. City of Kokomo, Ind. Hous. Auth.*, 909 F.3d 182, 190 (7th Cir. 2018); *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015). "'It is not the obligation of the court to research and construct the legal arguments open to parties, especially when they are represented by counsel.'" *Riley*, 909 F.3d at 190 (quoting *Beard v. Whitley Cty. TEMC*, 840 F.2d 405, 408–09 (7th Cir. 1988)); *see also Schaefer v. Univ. Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). The defendants' arguments on this issue may be disputable, but if so, it is Mr. Tomsheck's duty to explain why, and he did not do so. The Court could not deny summary judgment without building an argument on Mr. Tomsheck's behalf from the ground up, which is not the Court's role. *United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) ("The parties—not the courts—must research and construct available legal arguments."). Summary judgment is therefore warranted for Mr. Tomsheck's failure to show that he engaged in protected speech.

This waiver applies doubly to Mr. Tomsheck's claims against the individuals, each of whom asserted a defense of qualified immunity.[2] Though qualified immunity is an affirmative defense, once it is raised the plaintiff bears the burden of establishing that the right at issue is clearly established. *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). That requires a plaintiff to show "that there is a case 'on point or closely analogous'" such that "a reasonable government employee would or should know that her conduct is unlawful." *Sebesta v. Davis*, 878 F.3d 226, 234 (7th Cir. 2017). Having failed to argue that his speech was protected in the first place, Mr.

---

[2] Mr. Tomsheck would face an uphill battle on that issue anyway: "To say that the line between protected and unprotected speech is so unclear that a judge must engage in after-the-fact balancing is practically to invite an immunity defense, for only a violation of clearly established law permits an award of damages." *Comsys, Inc. v. Pacetti*, 893 F.3d 468, 472 (7th Cir. 2018).

Tomsheck failed to carry his burden of showing that it was clearly established that his speech was protected. Summary judgment is warranted for each of the individuals on that basis as well.

Even assuming Mr. Tomsheck had engaged in protected speech, his claim would still fail on the causation element. Mr. Tomsheck raises three factors that he believes suggest an improper motive for his firing, but that evidence falls well short of allowing an inference that the Council voted to fire him because of his testimony. Mr. Tomsheck notes that after the Town Council voted to terminate his employment, a councilmember read from a pre-prepared letter informing him of the decision. Mr. Tomsheck argues that this shows that his firing was a foregone conclusion. That says nothing at all, though, about *why* he was fired, nor does it suggest that he was fired for an illicit reason. He also notes that at the executive session in which his employment was discussed, a representative of the town clerk–treasurer was not present, which he contends violated state law. Again, however, that fails to point to his testimony as the reason for his firing, and it would require pure speculation to conclude that the representative was excluded from the meeting for that reason.

Finally, Mr. Tomsheck argues that one of the defendants may have failed to produce an email in response to a request for production of documents, which he suggests might warrant further discovery. He never filed a motion to compel, though, nor did he file a Rule 56(d) motion with a supporting affidavit showing the need to conduct additional discovery. Mr. Tomsheck also argues that the failure to produce the email—a copy of which he already had from other sources—may suggest a conspiracy between the Town Council and a local community group. But not only is that pure speculation, he fails to show how that might draw any connection between his testimony and his firing. Viewing all of this evidence in combination, no reasonable

juror could conclude that Mr. Tomsheck was fired because of his testimony. Summary judgment is therefore warranted against Mr. Tomsheck on his First Amendment retaliation claims.

**B.     State Claims**

Having resolved the federal claims—the only claims over which the Court has original jurisdiction—the Court must decide whether to address the state claims as well. A district court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Although the decision is discretionary, 'when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). "The presumption is rebuttable, 'but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *Id.* (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)). That course is appropriate here. The state claims depend on questions of the scope and availability of a cause of action under state law, as well as the applicability of any immunity under state law. Comity dictates that the state courts should be permitted to address those matters of state law, should Mr. Tomsheck decide to pursue those claims. The Court therefore relinquishes supplemental jurisdiction over the state claims.

## IV.  CONCLUSION

The Court GRANTS the motion for summary judgment [DE 40] on the federal claims, and relinquishes supplemental jurisdiction over the state claims. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: August 12, 2019

                                           /s/ JON E. DEGUILIO
                                          Judge
                                          United States District Court